We'll hear argument now in the case of Birch REA Partners, Inc. v. Regent Bank. Good morning, Your Honors. My name is Brett Datto. I represent... Good. Please hold until your call. We need to get both lawyers available. I don't see Ms. Calger. All right. Now we have Ms. Calger zoomed so far out, she might as well be in another county. All right. Now, Mr. Datto, please proceed. Yes. Good morning again, Your Honor. My name is Brett Datto, and I represent Birch REA, the appellant in this case. I would like to reserve two minutes, please, for rebuttal. Your Honors, this is a case that deserves to be tried as the record demonstrates that there are many questions of material fact that are in dispute in this case. This is not an appeal following a trial on the merits of the case. Rather, it's an appeal following a grant of summary judgment where the trial court failed to draw any reasonable inferences in the light most favorable to our client, Birch REA, as the non-moving party. When Regent Banks sued Birch REA in 2016, the bank alleged that Birch knowingly and with the intent to defraud a federally insured bank overstated by more than $2 million the value of a piece of property that Birch had appraised nine years earlier in 2007. However, as part of their original complaint, the bank never valued the real estate retrospectively to 2007 to challenge or to otherwise refute Birch's valuation. In fact, as of 2016, there was nothing in the record to support that the bank's claims that Birch's value was inaccurate or was otherwise caused financial harm to the bank. That allegation, your honors, was simply false and Regent Bank knew that it was false because there were prior valuations from experts and other transactions which value the property in line with the value that was prepared in 2007 by Birch REA. Regent Bank also alleged in that same lawsuit, your honors, that Birch, which is a nationally recognized net lease real estate valuation firm, used deceptive and secret methods to avoid detection by Regent Bank that did not discover and could not have discovered Birch's alleged misconduct until February of 2016. Your honors, that allegation was also false and lacked probable cause because Regent Bank knew that they had the subject transaction reviewed by its loan committee at least twice and perhaps yearly between the years of 2010 and 2016. And we supported that in the record, your honors, at A, 984 to 992. And I'd like your honors to take particular note of those bank reviews. Your honors, Birch appraised the subject property in May of 2007. The basis for the lawsuit against Birch, as set forth in paragraph 21 of the complaint against our client, was that in late 2010, Regent Bank, quote, relied upon the Birch appraisal making their decision to purchase the mortgage loan on the secondary market, end quote. And similar claims of reliance, your honors, are repeated in the complaint at paragraphs 22 and 39. Absent reliance on the part of the banks on the Birch REA report, the claims by Regent Bank in the underlying lawsuit necessarily failed. We have pointed out many times in the record that there is substantial evidence to demonstrate that the bank parties did not rely upon Birch's report and knew that to be the case when they filed the lawsuit in 2016. And we know this for several reasons. First, we know that on November 22nd of 2010, the bank parties engaged first service PGP valuation to appraise the subject property. In the engagement letter that Regent Bank prepared and sent to first service, the bank said, quote, we will rely upon this appraisal in rendering a decision on finance, end quote. The second reason we know that the complaint lacked probable cause was that following the bank parties engagement of first service PGP, the least fee interest of the property was valued only 11% less than Birch's appraisal. And this was one year after what we now know as the Great Recession of 2008 and 2009. Mr. Datto, it sounds to me like you're making a lot of arguments that had the underlying case gone to trial, you could have raised as a defense. But the issue here is whether or not they had probable cause or acted with malice and acted with malice in bringing the lawsuit. Where do we draw the line on determining probable cause up front and ferreting out your defenses to the underlying action? Because what I'm hearing are defenses to the underlying action. And I don't think for a malicious prosecution case, that's the route we go down. I agree that's not the route you go down, Judge Sinead. The route you go down is an analysis of whether at the time that the bank filed the lawsuit in 2016, a reasonable and intelligent person in the shoes of the lawyer filing the lawsuit could reasonably believe that he or she had probable cause as defined in the law to institute the lawsuit. So I'm not talking about a defense of the merits of that case. I'm talking about whether the institution of it was proper in the first place. I've served as an expert, Your Honor, across the country in frivolous litigation cases. That's the standard that this court has to employ when you are analyzing whether or not at that point in time, 2016, looking back at what Regent Bank knew at the time that they acquired this mortgage loan, whether they had probable cause to say that they suffered harm at the hands of Birch REA. Why wouldn't the independent Potter report that they obtained that identified nine deficiencies and the hiring of outside lawyers to assess, why doesn't that meet a probable cause standard? Again, they may not win on it. You have meritorious defenses. Very good question, Your Honor, for several reasons. First of all, the main reason is, Your Honor, that Mr. Potter never performed a valuation of the property. But why doesn't that, why does that go to probable cause? If he testified at trial, that would be a great line of cross-examination and something the jury may not believe what's in the report. But why does that take away probable cause? Sure. Because if you look at the substance of the 2016 action, the bank alleged that they relied upon Birch REA in acquiring the loan. Mr. Potter never offers an opinion as to whether or not the bank did or even could have relied upon the Birch REA appraisal. That's number one. So therefore, the lawyer who is receiving this report from Mr. Potter has an obligation to support the allegations in the complaint that I cited in my opening. Why wouldn't the testimony from the corporate representative satisfy that? She said, the original corporate representative, she said they relied on it. And that didn't seem to be disputed in any way. Oh, it was disputed, Your Honor, in many ways. And the first way that it was mainly disputed was when I showed her, Dawn Calder you're referring to, Your Honor, when I showed her the letter that her loan committee member, Mr. Mazza, who was also deposed in the case, wrote to First Service PGP. And that letter, which was done in 2010 at the time that they were considering the acquisition of the loan, said directly, we are going to rely upon this as our decision for purposes of financing. So there's an admission by the bank, by their own loan officer, and by their loan committee, because it's rampant throughout their loan committee notes, that the bank intended to rely on the Birch REA report in acquiring this loan. Mr. Potter doesn't dispute that. And I find it interesting, Your Honor, and I'd ask you to take a hard look at Mr. Potter's report. He purposely did not date that report, leaving aside for the moment that his not dating the report is a violation. Mr. Datto, you're continuing to argue the merits. I think you would be advised to turn your attention in a different direction to the cross appeal. You have a cross appeal seeking attorney's fees on the ground that this suit is frivolous. District Court denied that claim, not on the ground that the suit was anything other than frivolous, but on the ground that awards of attorney's fees are procedural rather than substantive. And you're defending that. Let me ask you a parallel question. There's an attorney's fees shifting provision in Title VII of the Civil Rights Act of 1964. When a Title VII suit is pursued in state court, is a state judge free to ignore the attorney's fees provision in Title VII? I don't think they're free to ignore it, Your Honor, but I think that in this particular case, the problem for the bank— If a state judge is bound by an attorney's fees shifting provision in federal law, why in diversity litigation is a federal judge not bound to apply a fee shifting provision in state law? I think because of the Erie Doctrine, and I think because of the case that you cited— The Erie Doctrine says that state and federal courts should render the same decision in diversity cases. Right, but also— for cases where federal statutes or rules provide otherwise. But as I see it, you're not arguing that any federal statute or rule provides that there should be a different outcome in state and federal court. That's correct. I'm not arguing that. What I'm arguing is that— And then we're left with the standard rule of the Erie Doctrine, which is that state and federal courts should produce identical outcomes. Well, but the way that this was pled by the bank, Your Honor, was under state court, was under the state rule of the Indiana Code, state law. Yes. They did not—yes, they did not plead this, Your Honors, as a basis for recovery. There was no counter— Forget pleading. You don't have to plead law. The holding of the district court is that state fee-shifting rules never apply in federal court, even though there's no federal statute and no federal rule against it. And we're trying to figure out whether that ruling is correct. I think this court made the correct ruling in the Dempsey case, Your Honor, and I believe that the—I'm sorry, that the bank party cited the Dempsey case. I think that's the wrong decision. I think while the Seventh Circuit in Dempsey did not expressly state the reason why it affirmed the award of attorney's fees, I think courts in this circuit have recognized that under Indiana state law, there may be availability of remedies in certain cases where the case is removed from state court. That's not the facts of this case, and that's why the bank's reliance on Dempsey is wrong. I don't see what removal has to do with anything. We're just back to the basic eerie rule that the outcome in federal court is supposed to be the same as the outcome that would be reached in state court, with the provisos that federal statutes and rules can call for different outcomes. And we don't—you agree that we don't reach the provisos. That's why I'm troubled by the district court's ruling. Your Honor, I think the district court analyzed that issue correctly, and I know you want to focus on the issue of the cross appeal. I'd like to reserve my last two minutes because the clock is getting there. I believe we don't even get to the issue of the cross appeal because I think that I've been able to establish that there were so many genuine issues of fact that dispute at the district court level so as to deny the grant of summary judgment, and we can, you know, better these issues out once we get a trial on the merits. I have one more question. Sure. It's a parallel question. Suppose state law provides for an award of interest in a particular kind of case. Does that provision apply in federal court in a diversity case? My position is, based on the case law that we cited, Your Honor, that it does not. Okay. We have dozens of holdings that it does. We'd have to overrule quite a few, and I can't see why attorney's fees are different from interest. Okay. Thank you, Mr. Datto. Ms. Calder. She's muted. I think I was new here. All right. Thank you very much. May it please the court. I am going to start where Your Honor left off. Judge Easterbrook, you were showing that you had an interest specifically in the cross appeal, and I'm going to start there. With respect to the cross appeal, the district court relied on two key cases, relied on the Sintas case and the Williams case. Ms. Calder, I want to ask you a question that you can address. You don't have to respond to me right away. You can address this in the nature of your argument on the cross appeal. Why does not Rule 11, the Federal Rules of Sole Procedure, just control this? It doesn't conflict with Rule 11, and the rule is that as long as it's substantive and it doesn't have a conflict, then you proceed and can bring the state court action. In terms of those two cases, though, Sintas and Williams. I'm sorry. Let me follow up, please, on what Judge Kirsch asked. Would it conflict, as the Sixth Circuit said, with Rule 11's safe harbor provision? And that is an interesting question because Sintas and Williams both rely on the Sixth Circuit, correct? And I don't think that it conflicts because it covers different conduct. And the key, this is where I was headed with those Sintas and Williams being wrongfully relying upon that Ohio case law, is because the Indiana statute has a prevailing party provision. It requires that you be a prevailing party in order to qualify. That's an element of qualifying under Indiana Code Section 345211. There is no corresponding provision in the Ohio statute, and that's the statute that the Sixth Circuit was interpreting in the case that Sintas and Williams are founded upon. That prevailing party statute is specifically— But the Sixth Circuit wasn't focused on that particular issue. They were focused on the safe harbor provision, which applies—regardless, applies across the board. So I don't know how prevailing party would save you on that. In terms of the safe harbor provision, Your Honor, it provides a different focus in terms of the conduct of the attorneys and the conduct of the parties. It applies more broadly, for example, than the Indiana statute. So you could have Rule 11 sanctions that are tied to, for example, discovery-type situations or other different procedural issues along the way in a case, whereas Indiana Code Section 345211 applies only where there is a prevailing party on the merits of the case. That, in our view, is what takes Sintas and Williams outside of the other cases cited throughout our briefs from the Seventh Circuit and the district courts in the Seventh Circuit that recognize the applicability of the Indiana statute in federal court diversity actions. In fact, Indiana has its own Rule 11. So that's further evidence that the General Assembly, in enacting the frivolous claims statute, didn't intend for it to usurp the Rule 11 of Indiana. So, in essence, in terms of the applicability of Indiana Code Section 345211 in diversity cases, the reason that that provision should be available to plaintiffs in diversity cases is exactly as Judge Easterbrook was explaining, that Erie guarantees a litigant that if he takes his state law cause of action to federal court, follows the rules of that court, and abides by them, the results will be the same as if he had brought it... No, no, that's not what Erie says. Erie says that's the norm unless a federal statute or rule provides otherwise. Now, I looked, I thought, reasonably carefully at Birch's reply brief, which cites Rule 11 once but doesn't rely on it. But now that my colleagues have raised it, I wonder whether the Safe Harbor Clause of Rule 11 isn't such a contrary rule. Section 1927 isn't. It doesn't suggest anything contrary to state law. But the Safe Harbor Clause might. Your Honor, I agree that that was not an issue that was argued in either below, it was not the foundation of the district court's opinion, and it was not an issue we addressed. The district court simply did not state the Erie Doctrine correctly. We will do so. And that leads to the proviso. It's been around ever since the Civil War. It's been around ever since the West case in 1980, that if a federal rule provides something, it controls even over state doctrine and justifies a different outcome in federal court. So, okay, the issue has been raised. Why doesn't the Safe Harbor Clause in Rule 11 provide otherwise than the Indiana Doctrine? Your Honor. And again, I believe that Rule 11, it covers a broader range of conduct. It provides for a different, it covers the conduct of the attorneys and the parties versus the statute, which requires you prevail on the merits of your case. But wouldn't Rule 11 have applied here if this case, if there were original federal jurisdiction and they filed this under a federal statute and came into federal court, wouldn't Rule 11 apply? It may be broader and apply to other situations as well, but it seems that it would certainly apply here that you would have sent a letter saying, this is a frivolous lawsuit and cited Rule 11 and asked to withdraw it. And instead, Your Honor, what we did was we brought a claim that asserted that. And again, I think that the two are different ways of addressing different behavior, but I'm not, I don't think they're in conflict. I think they work in harmony. The claim is asserted, it's presented, and it sits in front of the court for a much longer period than the safe harbor provisions of Rule 11. In essence, I'll move back to arguments with respect to responding to the main appeal in this case. On those issues, with respect to malicious prosecution, we would point out that where the line is drawn is drawn by the elements of that Indiana state law claim. The Indiana state law claim elements are that a defendant instituted or caused to be instituted a cause of action against the plaintiff, that defendant acted maliciously in doing so, that defendant had no probable cause to institute the action, and that the original action was terminated in the plaintiff's favor. Here, the district court found that elements two and three were missing in the case presented to it. In Indiana, malicious prosecution actions are not generally favored, and they are construed strictly against the parties bringing the action. The district court recognized that the existence of any probable cause is an absolute defense to a malicious prosecution action. And here, the key element of probable cause for the underlying lawsuit was the Potter report. That report became the very foundation of the complaint. It was cited in the complaint. It was quoted in the complaint. The nine deficiencies that Judge St. Eve discussed were recited in the complaint. There really is not a basis to hold that the Potter report was not relied upon in bringing the complaint. We pointed out in our briefs that the arguments that are made by Birch are arguments that are, again, arguments that could be raised in the underlying action. And when we talk about reliance and reasonable reliance in this case, in the malicious prosecution action, the question is, did we rely on the Potter report? And we did. Regent Bank relied on the Potter report. The issue of reliance gets buzzed up when we start talking about issues of, did we rely on the appraisal? Now, there may be some conflicting evidence that could have been relevant to a summary judgment motion in the underlying action concerning that reliance on the Birch appraisal. But here, the question relied on by the district court is, did we rely on the Potter report in bringing the complaint? And the district court found there was no issue of fact with respect to that. In terms of the other element, the court looked at maliciousness. And maliciousness is more than just, you were wrong, you might have been wrong, the case might have been decided against you. It requires a level of culpability. And there's no evidence in the record of such maliciousness. There's some overlap between probable cause and maliciousness because an absence of probable cause can support a finding of maliciousness. But here, there was no absence of probable cause. Therefore, the court was correct in finding that the malicious prosecution claim should be dismissed. Next. If I may have one second, I would turn back to the counterclaim, yes, to the counterclaim in the cross appeal, solely to note that the Rule 11 provisions in the Indiana statute do not seem to need to cover the same conduct. They do not seem to be in conflict. There is no doubt that if this case had been brought in Indiana State Court, we would be able to bring the claim under Indiana Code 345211. And we submit that the outcome of this case should not be different based on the diversity jurisdiction of the court. If there are no further questions on either the appeal or the cross appeal. Thank you, Ms. Calgary. Thank you. Anything further, Mr. Datto? Yes, Judge Easterbrook. I wanted to address your question, Judge Easterbrook, earlier about the cross appeal because I don't think I sufficiently addressed it. So, if I understand Your Honor's question and the comments that Judge Kirsch and Judge Saini raised, Rule 11, the safe harbors, allow you to withdraw claims if you're notified, if a party is notified that the claims are frivolous. This is different than an Indiana statute which doesn't have the safe harbor provision. Mr. Datto, if I look at your briefs, where will I find a discussion of the Rule 11 safe harbor? You won't, Your Honor. You won't. I won't. But the issue was raised, Your Honor. I just wanted to address it. We have raised the issue, but your reply brief in addressing this does not say that an award of fees is inconsistent with any federal statute or rule. And normally, in civil litigation, we limit parties to the arguments they have made in their briefs. I understand that. I listened to the first case. You made that clear, Your Honor, in that case as well. Your Honor, let me just conclude with this on the issue of probable cause. If we're to believe the bank's position, then in every case where someone gets an expert report and in every case where someone comes forward with an affidavit from a lawyer saying that he or she reasonably believed in the existence of the facts on which the claim is based, then no party can ever bring a malicious prosecution action. Thank you, Mr. Gatto. The case is taken under advisement.